UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
APR 10 2013
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

AVALERE HEALTH, LLC, )
)
Plaintiff, )
)
v. ) Case No. 1:12-cv-00997 (LO/IDD)
)
AVALERE.ORG, et al., )
)
Defendants. )
)

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion for Default Judgment against Defendants <AVALERE.ORG> and <AVALERE.NET> ("Defendants" or "Domain Names") pursuant to Federal Rule of Civil Procedure ("FRCP") 55(b)(2). (Dkt. No. 12.) After a representative for the Defendants failed to answer or file a responsive pleading to either the Complaint or Plaintiff's Motion for Default Judgment, the undersigned Magistrate Judge took this matter under advisement. Upon consideration of the Complaint, Plaintiff's Motion for Default Judgment, and the supporting exhibits, the undersigned Magistrate Judge makes the following findings and recommends that default judgment be entered against Defendants.

### I. INTRODUCTION

Avalere Health, LLC ("Plaintiff") filed the Complaint on September 6, 2012, seeking relief under the Anti-Cybersquatting Consumer Protection Act ("Act" or "ACPA"), 15 U.S.C. § 1125(d) ("ACPA"), based on Andrew Valere's ("Registrant's") bad-faith use of the domain names <AVALERE.ORG> and <AVALERE.NET>. (Compl. ¶¶ 2, 3.) The ACPA grants trademark owners a remedy against "cybersquatting." Cybersquatting occurs when a trademark

owner claims that another party registers or uses the owner's trademark as a domain name with the bad faith intent of profiting from the sale or use of the domain name.[1] Plaintiff has moved for default judgment against the Defendant Domain Names and requests that this Court order VeriSign Global Registry Services ("Verisign") to transfer the registrar of <AVALERE.NET> and order the Public Interest Registry to transfer the registrar of <AVALERE.ORG> to Godaddy.com, LLC and order the aforementioned company to register the same in Plaintiff's name. (Compl. ¶ 3; Mem. Supp. Mot. Default J. at 10.)

## A. Jurisdiction and Venue

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." The court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment. This Court has subject matter jurisdiction over this case pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1337, and 1338 because this case arises under the federal Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.* (Compl. ¶ 4.)

This Court also has *in rem* jurisdiction over the Defendants under 15 U.S.C. § 1125(d)(2)(A) because the registrars wherein the Domain Names are registered are located within this district.[2]

---

[1] *See Corsair Memory, Inc. v. Corsair7.com*, 2008 U.S. Dist. LEXIS 110067 at *20 (N.D. Cal. Nov. 3, 2008) (quoting 15 U.S.C. § 1125(d)(1)(B)(i)(VI) to define cybersquatting as: "Offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct."); *see also Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 295 (2d Cir. 2002) (explaining Congress's enactment of the ACPA as a supplement to the federal trademark statute in order to combat bad-faith registration or use of domain names).

[2] VeriSign is the registry for all domain names in the ".net" top-level domain, and VeriSign's principal place of business is located in this judicial district. (Compl. ¶ 9.) The Public Interest Registry is the registry for all

(Compl. ¶¶ 9, 10; Mem. Supp. Mot. Default J. at 5.) Similarly, venue is appropriate in this District under 28 U.S.C. § 1391(a), as well as 15 U.S.C. § 1125(d)(2)(C)(i), which states that "a domain name shall be deemed to have its situs in the judicial district in which . . . the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located." (Compl. ¶ 10.)

### B. Service of Process

The ACPA allows a trademark owner to file an *in rem* civil action against a domain name and provides instructions on how to provide sufficient notice of such an action. Specifically, the ACPA provides that service of process in an *in rem* action may be accomplished by sending notice of the alleged violation and intent to proceed under the ACPA to the registrant of the domain name at the postal and e-mail addresses provided by the registrant to the registrar, and by publishing notice of the action as the court may direct promptly after filing the action. 15 U.S.C. § 1125(d)(2)(A) and (B).

The undersigned finds that Plaintiff has complied with all the notice requirements necessary to bring an *in rem* action against the Infringing Domain Names under the ACPA. On August 9, 2012, Plaintiff sent a notice to the Registrant of the Infringing Domain Names via postal mail and e-mail, advising them of the ACPA violations and of Plaintiff's intent to proceed under the ACPA.[3] (Compl. ¶ 8.) Plaintiff also sent, via postal mail and e-mail, a copy of the Complaint to the Registrant. (*Id.*) On September 20, 2012, Plaintiff filed a motion for service by publication. (Dkt. No. 5.) This Court granted Plaintiff's motion, and pursuant to the Court's

---

domain names in the ".org" domain. (Mem. Supp. Mot. Default J. at 5, fn. 1.) The Public Interest Registry is located in Reston, Virginia. (*Id.*)

[3] Plaintiff also sent this information to Mr. Benjamin L. Willey, Esq. and Mr. John Daly both who reached out to Plaintiff at various times as an agent of the Defendants. (Compl. ¶¶ 6-8.)

3

September 27, 2012 Order, Plaintiff published notice of this action in *The Washington Times* on October 3, 2012. (Dkt. No. 9.) As set forth in the notice of action, any person claiming an interest in the Infringing Domain Names was required to file an answer or other response to the Complaint within twenty days from the date of the publication of the Order in *The Washington Times*. (*Id.*) For the reasons stated above, the undersigned finds that service of process has been accomplished in this action.

### C. Grounds for Default

Plaintiff filed the Complaint on September 6, 2012. A representative for the Defendants has failed to appear, answer, or file any responsive pleading in this matter. On November 2, 2012, Plaintiff filed a Request for Entry of Default against the Domain Names with the Clerk's Office. (Dkt. No. 10.) The Clerk entered default against the Domain Names on November 5, 2012. (Dkt. No. 11.) On November 20, 2012, Plaintiff filed a Motion for Default Judgment, and the Court held a hearing on the matter on December 14, 2012. (Dkt. Nos. 12, 15.) When a representative for the Defendants failed to appear at the hearing, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation.

## II. FINDINGS OF FACT

Upon a full review of the pleadings,[4] the undersigned Magistrate Judge finds that Plaintiff has established the following facts.

### A. Plaintiff's Mark

Plaintiff is a global limited liability company organized under the laws of Maryland, and it maintains a principal place of business in Washington, DC. (Compl. ¶ 1.) For more than

---

[4] The pleadings include the Complaint (Dkt. No. 1), Plaintiff's Motion for Default Judgment (Dkt. No. 12),

seven years, Plaintiff has existed as an entity offering health-related advisory services under its Avalere mark. (Compl. ¶ 11.) Plaintiff owns a number of trademarks and service marks including the trademarks "AVALERE," "AVALERE & Design," "AVALERE CER INTELLIGENCE," "AVALERE EBM INSIGHTS," and "AVALERE EBM NAVIGATOR."[5] (Compl. ¶ 13.) Plaintiff uses the Avalere Mark throughout the United States in connection with providing health care organizations with consulting, policy analysis, and business strategies. (Compl. ¶ 12.) Therefore, the general public identifies products and services advertised under the Avalere Mark as being affiliated with or endorsed by Plaintiff. Plaintiff has registered six of the Avalere marks with the United States Patent and Trademark Office ("USPTO") in connection with its products and services. (Compl. ¶ 13.)

### B. Registrant's Infringing Domain Names <AVALERE.ORG> and <AVALERE.NET>

Defendants acquired the infringing domain names in October 2010. (Compl. ¶ 16.) Each of the Domain Names includes Plaintiff's protectable mark. (Compl. ¶ 14.) The Infringing Domain Name <AVALERE.NET> is maintained by VeriSign, which is located in this judicial district. (Compl. ¶ 9.) The Infringing Domain Name <AVALERE.ORG> is maintained by Public Interest Registry, which is located in Reston, Virginia. (Mem. Supp. Mot. Default J. at 5, fn. 1.) Neither

---

and Plaintiff's Memorandum in Support of Motion for Default Judgment (Dkt. No. 13).

[5] The mark AVALERE, U.S. Reg. No. 3,294,805, was filed with the United States Patent and Trademark Office ("USPTO") on February 24, 2005 and registered September 18, 2007. (Compl. ¶ 13.) The mark AVALERE & Design, U.S. Reg. No. 3,665,777, was filed with the USPTO on July 1, 2008 and registered August 11, 2009. (Id.) The mark AVALERE, U.S. Reg. No. 3,922,057, was filed with the USPTO on March 19, 2010 and registered February 22, 2011. (Id.) The mark AVALERE CER INTELLIGENCE, U.S. Reg. No. 4,168,596, was filed with the USPTO on October 1, 2010 and registered July 3, 2012. (Id.) The mark AVALERE EMB INSIGHTS, U.S. Reg. No. 4,165,244, was filed with the USPTO on October 1, 2010 and registered June 26, 2012. (Id.) The mark AVALERE EBM NAVIGATOR, U.S. Reg. No. 4,165,243, was filed with the USPTO on October 1, 2010 and registered June 26, 2012. (Id.)

Domain Name direct consumers to websites owned by the Registrant that are making, or have made, a bona fide offering of goods or services. (Compl. ¶ 20.) The Domain Names are not used for noncommercial or fair use of the Plaintiff's mark. (Compl. ¶ 21.) <AVALERE.NET> domain directs consumers to a website that provides sponsored links by Google AdSense for websites related to medical and health-related services. (Compl. ¶ 22.) <AVALERE.ORG> domain directs consumers to a parked website that offers links to unrelated commercial sites.[6] (Compl. ¶ 23.) The Domain Names are misdirecting traffic from Plaintiff's website and are making money for the Registrant as a result of the consumer confusion. (Compl. ¶ 29.)

Beginning in November 2011, Plaintiff began attempts to identify the true registrant of the Domain Names. (Compl. ¶ 6.) Plaintiff attempted to contact the Registrant through email and certified mail. (*Id.*) On November 22, 2012, Mr. Benjamin L. Willey, Esq. identified himself as counsel for the Registrant and e-mailed Plaintiff's counsel offering to sell the Domain Names for $55,000. (*Id.*) Mr. Willey ceased returning Plaintiff's phone calls and e-mails. (*Id.*) On May 24, 2012, Mr. John Daly, a non-lawyer agent of the Registrant, contacted Plaintiff again offering to sell the domain names for $50,000. (Compl. ¶ 7.) Mr. Daly admitted to Plaintiff that Andrew Valere was not the name of his client, the Registrant. (*Id.*) The true identity of the Registrant and the correct address at which to serve the Registrant has never been disclosed to Plaintiff. (*Id.*)

On August 9, 2012, Plaintiff sent a notice of the alleged violation and intent to proceed under 15 U.S.C. § 1125(d)(2)(A) with a copy of the Complaint to the Registrant by postal mail and e-mail. (Compl. ¶ 8.) This information was also sent to Mr. Willey and Mr. Daley. (*Id.*)

---

[6] After the filing of this Action, the Domain Names no longer resolve to any websites. Screenshots of the

## III. EVALUATION OF PLAINTIFF'S COMPLAINT

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." A defendant in default concedes the factual allegations of the complaint. *See, e.g., Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) (default has the effect of admitting factual allegations in the complaint). Default does not, however, constitute an admission of the adversary's conclusions of law, and is not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Instead, the Court must "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action." *Id.*

Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge must evaluate Plaintiff's claims against the standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure to ensure that the Complaint contains plausible claims upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss). To meet this standard, a complaint must set forth "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether allegations are plausible, the reviewing court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing

---

Domain Names prior to the change are attached to the Complaint at Exhibits 7 and 8.

*Iqbal*, 556 U.S. at 679).

A. Federal Trademark Infringement and Unfair Competition

Plaintiff alleges that the Registrant's continued use of the Domain Names violates 15 U.S.C. §§ 1114 and 1125(a) because it constitutes trademark infringement. (Compl. ¶¶ 33, 35.) Plaintiff moves this Court to enter an Order of default judgment against Defendants and to authorize the transfer of ownership of the Domain Names to Plaintiff. (Mot. Default J. 1; Compl. ¶ Prayer for Relief.)

Title 15 U.S.C. § 1114 provides that a person will be liable in a civil action, if, without consent of the registrant, the person uses

> in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or . . . colorably imitate a registered mark and apply such . . . colorable imitation to . . . advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1)(a) and (b).

Furthermore, § 1125(a) provides that a person will be liable in a civil action, if, without consent of the registrant, the person uses any word, term, name or combination thereof that:

(A)  is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B)  in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

A plaintiff successfully pleads a claim under §§ 1114 and 1125(a) where he alleges that (1) he possesses the mark; (2) the defendant used the mark in commerce; (3) such use was in connection with the sale, offering for sale, distribution or advertising of goods and services; and (4) that defendant's use is likely to confuse consumers. *Lamparello v. Falwell*, 420 F.3d 309, 312-13 (4th Cir. 2005).

Plaintiff has alleged sufficient facts to support its claims of trademark infringement and unfair competition in violation of §§ 1114 and 1125(a). Plaintiff has demonstrated that it possesses the AVALERE Mark through presentment of valid registrations for the Mark from the USPTO. Plaintiff has also demonstrated that the Registrant has utilized the AVALERE Marks in commerce in connection with the sale or advertisement of goods or services. Without authorization from the Plaintiff, the Registrant has included the AVALERE Mark in the Defendant Domain Names. In addition, the Registrant has operated the Defendant Domain Names as websites for the sale of goods and services, either by listing websites related to Plaintiff's services or by directing visitors to unrelated commercial sites, without Plaintiff's permission. Therefore, Plaintiff has pled sufficient facts to demonstrate that the Registrant has used the AVALERE Mark "in commerce." *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 365 (4th Cir. 2001) (holding that the defendant need not sell goods or services on its website for the inclusion of the infringing marks in the domain name to constitute in commerce so long as it prevents consumers from using the plaintiff's services or connects them to others' goods or services).

Furthermore, the Defendant Domain Names are likely to cause confusion to consumers. To determine whether confusion is likely, a court will consider the strength or distinctiveness of the mark, the similarity of the two marks, the similarity between the goods/services that the marks identify, the defendant's intent, and among other things, the similarity of the advertising used by the parties. *Lamparello,* 420 F.3d at 315 (citing *Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1527 (4th Cir. 1984)). Once a plaintiff has shown that confusion is likely, the court will grant relief. *Id.* at 314 (stating that a defendant would only be liable for infringement on plaintiff's trademark under the Act where defendant's use of the mark is likely to cause confusion).

Here the Registrant has used the AVALERE Mark in its entirety in the Domain Names. Furthermore, the <AVALERE.NET> domain directs consumers to sponsored links for websites related to medical and health-related services, the same business as Plaintiff. (Compl. ¶ 22.) Accordingly, the Domain Names are likely to cause confusion to consumers by leading them to believe that the websites and/or products offered therein are affiliated with or sponsored by Plaintiff. Additionally, through Registrant's agents—Mr. Willey and Mr. Daly—Registrant requested at least $50,000 for the sale of the Domain Names to Plaintiff, illustrating the Registrant's intent to profit from the use of Plaintiff's Mark in the Domain Names. For these reasons, this Court finds that the Registrant's use of Plaintiff's AVALERE Mark in the Defendant Domain Names constitutes trademark infringement and unfair competition within the purview of §§ 1114 and 1125(a).

### B. ACPA

Plaintiff further contends that it is entitled to relief under the ACPA. The ACPA provides

that a person is liable to the owner of a mark where the person has a "bad faith intent to profit from that mark ... and uses a domain name that ... is distinctive at the time of registration of the domain name ... [and is] confusingly similar to that mark." 15 U.S.C. § 1125(d)(1)(A)(i)-(ii). The inquiry under the ACPA is "narrower than the traditional multifactor likelihood of confusion test for trademark infringement." *Newport News Holding Corp. v. Virtual City Vision*, 650 F.3d 423, 437 (4th Cir. 2011) (citing *Coco-Cola Co. v. Purdy*, 382 F.3d 774, 783 (8th Cir. 2004)). The question under the ACPA is whether the domain names registered are identical or confusingly similar to plaintiff's mark. *Id.* The ACPA provides that a court may order the cancellation of the domain name or its transfer to the owner of the mark as remedy to the owner. *Id.* at § 1125(d)(1)(C).

As previously stated, the Defendant Domain Names are identical to Plaintiff's Mark creating a likelihood of confusion as to the source of the site. Furthermore, a balancing of the factors weigh in favor of finding that Plaintiff has alleged sufficient facts to show that the Registrant acted with a bad faith intent. The Registrant supplied false information for the Domain Names including a false name and contact information. (Compl. ¶ 26.) Upon learning of this lawsuit, the Registrant's agents requested at least $50,000 from Plaintiff for sale of the Domain Names. (Compl. ¶ 24.) Upon information and belief, the Domain Names have never been used for a legitimate non-commercial purpose. For these reasons, this Court finds that the Registrant has acted in bad faith in operation of the Domain Names in violation of § 1125(d).

## V. RECOMMENDATION

For the reasons set forth above, the undersigned Magistrate Judge recommends the entry of default judgment in favor of Avalere Health, LLC against Defendants <AVALERE.ORG> and

<AVALERE.NET> for violations of title 15 U.S.C. §§ 1114, 1125(a), and 1125(d). The undersigned Magistrate Judge further recommends that an Order be entered directing VeriSign, Inc. and the Public Interest Registry to immediately and permanently transfer to Avalere Health, LLC all proprietary and ownership rights to the names <AVALERE.ORG> and <AVALERE.NET> to Godaddy.com, LLC, the registrar of Plaintiff's choosing pursuant to 15 U.S.C. § 1125(d)(1)(C).

## VI. NOTICE

**By mailing copies of this Report and Recommendation, the parties are notified as follows. Objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.**

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and the Registrant at the following e-mail address valere.andrew@gmail.com.

/s/
Ivan D. Davis
United States Magistrate Judge

April 10, 2013
Alexandria, Virginia